## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

### CASE NO.:  1:21-cv-00192-MWM

OPTIONS UNLIMITED RESEARCH CORP.
DBA SAVVYSOFT,

         Plaintiff,

v.

WESTERN & SOUTHERN FINANCIAL
GROUP, INC.,

         Defendant.

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

JOEL B. ROTHMAN
*Pro hac vice*

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

Mr. John D. Gugliotta
**Gugliotta & Gugliotta, LPA**
3020 West Market Street
Fairlawn, OH 44333
Tel: 888-298-8589
Fax: 330-253-6658
Email: johng@inventorshelp.com

*Counsel for Plaintiff Options Unlimited Research Corp. Dba Savvysoft*

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................................... 1

II.  RELEVANT FACTS ALLEGED IN THE COMPLAINT ...................................................... 2

    A.  SavvySoft and TurboExcel.......................................................................................... 2

    B.  Western & Southern .................................................................................................... 3

    C.  W&S Licenses SavvySoft ............................................................................................ 4

    D.  SavvySoft Discovers W&S Violated the License Agreement ......................................... 5

III.  ARGUMENT ............................................................................................................... 6

    A.  Legal Standard........................................................................................................... 6

    B.  The New York Statute of Limitations Applicable to W&S's Breach of the TurboExcel License Agreement was Tolled Based on the Continuing Wrong Doctrine ............................... 7

    C.  SavvySoft Filed this Copyright Infringement Case within Three Years of Discovery of the Infringement Making it Timely............................................................................................ 12

    D.  The Complaint Adequately Alleges All the Elements of Copyright Infringement........ 14

        1.  The Complaint Adequately Alleges Copying of TurboExcel .................................... 14

        2.  The Complaint Adequately Alleges W&S's Liability for Indirect Copyright Infringement...................................................................................................................... 16

    E.  The Complaint Pleads Trade Secrets Claims Sufficiently to Withstand a Motion to Dismiss............................................................................................................................ 17

IV.  CONCLUSION............................................................................................................ 20

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

# TABLE OF AUTHORITIES

Page(s)

Cases

*Affordable Hous. Assocs., Inc. v. Town of Brookhaven*,
  49 Misc. 3d 570, 13 N.Y.S.3d 876 (N.Y. Sup. 2015) ............................................................ 11

*Affordable Hous. Assocs., Inc. v. Town of Brookhaven*,
  150 A.D.3d 800, 54 N.Y.S.3d 122 (2d Dep't 2017) ................................................................ 7

*Arrow v. Federal Reserve Bank of St. Louis*,
  358 F.3d 392 (6th Cir. 2004) ................................................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 6

*BJB Ltd. v. iStar Jewelry LLC*,
  No. 119CV3748ENVRER, 2021 WL 1431345 (E.D.N.Y. Apr. 9, 2021) .............................. 10

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
  376 F.3d 615 (6th Cir. 2004) ................................................................................................. 12

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
  489 F.3d 1129 (11th Cir. 2007) ............................................................................................. 17

*Carey v. Trs. of Columbia Univ. in City of N.Y.*,
  177 A.D.3d 452, 113 N.Y.S.3d 32 (1st Dep't 2019) ............................................................... 7

*Compulife Software Inc. v. Newman*,
  959 F.3d 1288, fn. 13 (11th Cir. 2020) ................................................................................. 18

*Compuware Corp. v. Int'l Bus. Machines*,
  259 F. Supp. 2d 597 (E.D. Mich. 2002) ................................................................................ 20

*Conley v. Gibson*,
  355 U.S. 41 (1957) ................................................................................................................... 6

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................................................... 12

*Ford Motor Co. v. Autel US Inc.*,
  No. 14-13760, 2016 WL 3569541 (E.D. Mich. July 1, 2016) ............................................... 14

*Ford Motor Co. v. Launch Tech Co.*,
No. 17-12906, 2018 WL 1089276 (E.D. Mich. Feb. 26, 2018)......................................... 18, 19

*Garron v. Bristol House, Inc.*,
162 A.D.3d 857, 79 N.Y.S.3d 265 (2d Dep't 2018).................................................................... 7

*Gilliam v. Am. Broad. Cos.*,
538 F.2d 14 (2d Cir. 1976)...................................................................................................... 15

*Greenfieldv. Mold-Rite Plastics, LLC*,
8:20-cv-00639-DNH-DJS, (N.D.N.Y. Dec. 16, 2020) ............................................................ 8

*Guilbert v. Gardner*,
480 F.3d 140 (2d Cir. 2007)...................................................................................................... 7

*Heartland Home Finance, Inc. v. Allied Home Mortg. Capital Corp.*,
258 Fed. Appx. 860, 2008 WL 77785 ..................................................................................... 18

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015)................................... 10

*ITOFCA, Inc. v. MegaTrans Logistics, Inc.*,
322 F.3d 928 (7th Cir. 2003) ................................................................................................... 15

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005).................................................................................................................... 6

*Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*,
569 F.2d 286 (5th Cir. 1978).................................................................................................... 18

*Lewis v. ACB Business Serv., Inc.*,
135 F.3d 389 (6th Cir. 1998) ..................................................................................................... 6

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ................................................................................................... 13

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993) ................................................................................................... 16

*Maloul v. New Colombia Res., Inc.*,
No. 15 CIV 8710 (KPF), 2017 WL 2992202 (S.D.N.Y. July 13, 2017) ................................... 7

*Mayer v. Mylod*,
988 F.2d 635 (6th Cir. 1993) ..................................................................................................... 6

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ................................................................................................... 15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ................................................................................................ 16, 17

*Mitchell v. Capitol Records, LLC*,
   287 F.Supp.3d 673, 2017 WL 6459808 (W.D. Ky. 2017) .......................................... 12

*Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*,
   477 F.3d 383 (6th Cir. 2007) ..................................................................................... 12

*Roth Steel Prods. v. Sharon Steel Corp.*,
   705 F.2d 134 (6th Cir. 1983) ....................................................................................... 6

*Saglioccolo v. Eagle Ins. Co.*,
   112 F.3d 226 (6th Cir. 1997) ....................................................................................... 7

*Salomon v. Town of Wallkill*,
   174 A.D.3d 720, 107 N.Y.S.3d 420 (2d Dep't 2019) .................................................. 7

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
   859 F.2d 434 (6th Cir. 1988) ....................................................................................... 6

*Scheuerv. Rhodes*,
   4I6 U.S. 232, 236 (1974) ............................................................................................. 7

*Shelton v. Elite Model Mgt., Inc.*,
   11 Misc. 3d 345, 812 N.Y.S.2d 745 ............................................................................ 8

*Stalis v. Sugar Creek Stores, Inc.*,
   295 A.D.2d 939, 744 N.Y.S.2d 586 (4th Dep't 2002) ................................................. 7

*T & N PLC v. Fred S. James & Co. of New York*,
   29 F.3d 57 (2d Cir. 1994) ............................................................................................. 7

*Thermodyn Corp v. 3M Co.*,
   593 F. Supp. 2d 972 (N.D. Ohio 2008) ..................................................................... 18

*Weiner v. Klais & Co.*,
   108 F.3d 86 (6th Cir. 1997) ................................................................................... 12, 13

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
   898 F.3d 1279 (11th Cir. 2018) ................................................................................. 18

Statutes

17 U.S.C. § 501 .............................................................................................................. 17

17 U.S.C. § 501(a) .................................................................................................... 12, 15

17 U.S.C. § 507(b) ......................................................................................................... 12

18 U.S.C. § 1836 .................................................................................................. 18

18 U.S.C. § 1839(5) ............................................................................................. 17

Ohio Rev. Code Ann. § 1333.61 .......................................................................... 18

Rules

Fed. R. Civ. P. 8 .................................................................................................... 6

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 6

Plaintiff OPTIONS UNLIMITED RESEARCH CORP. D/B/A SAVVYSOFT ("Savvysoft") by and through its undersigned counsel, and for its Memorandum of Law in Opposition to the Motion to Dismiss (Doc. 13), states as follows:

## I.        INTRODUCTION

This is a case of copyright infringement, trade secrets misappropriation, and breach of a license agreement for software. The software is TurboExcel. TurboExcel frees mathematical calculations locked up in Microsoft Excel spreadsheets and turns them into stand-alone software programs. The user can then use those standalone programs in the field by adding inputs to generate results.

Western & Southern Financial Group, Inc. ("W&S") was one such user. It licensed a single Professional user license of TurboExcel from Savvysoft in 2005. TurboExcel gave W&S's salespeople access to accurate insurance premium quotations because those salespeople could now take portable versions of the company's sensitive algorithms with them on their laptops when making sales calls.

When W&S originally purchased its license it went cheap and bought a single user Professional license for $3,000 that only covered a single spreadsheet developer on a single computer. Savvysoft's owner explained to W&S back in 2005 that a single user Professional license of TurboExcel was limited to use by one spreadsheet developer on the same computer used to create that spreadsheet, but W&S bought just the one license anyway.

In early 2018, as part of the annual license key update process, Savvysoft learned that W&S had exceeded its use of TurboExcel and set the program up on a central computer in the IT department to convert spreadsheets for the entire company. Since this exceeded the license W&S purchased, Savvysoft asked for past license payments, but W&S refused. This action followed.

W&S's motion to dismiss should be denied. Savvysoft's breach of contract claim under

1

New York law is not time barred, but was tolled by the continuing wrong doctrine. Savvysoft's copyright infringement claims are sufficiently pled, as are its trade secrets claims. The complaint adequately pleads all claims, but if this Court disagrees, leave to amend should be granted.

## II. RELEVANT FACTS ALLEGED IN THE COMPLAINT
### A. SavvySoft and TurboExcel

1. Plaintiff Options Unlimited Research Corp. is a New York corporation that does business as Savvysoft. (Doc. 1 ¶ 7). Richard Tannenbaum, a software developer, is the owner and founder of Savvysoft. (Doc. 1 ¶ 10).

2. Savvysoft created the software at issue here called TurboExcel. TurboExcel consists of a program that automatically converts mathematical calculations in Microsoft Excel spreadsheets into stand-alone software programs. (Doc. 1 ¶ 18).

3. TurboExcel is a computer program that creates standalone computer programs that do complex calculations that would otherwise require advanced knowledge of Microsoft Excel to perform. Most people do not know how to use Excel to perform complex calculations. So TurboExcel can take the complex calculations in an Excel spreadsheet and turn those calculations into standalone computer programs that only require the user to add the inputs to the calculations. The standalone programs created by TurboExcel take the inputs and spit out the outputs, all without requiring the user to know how to use Excel to do complicated spreadsheet calculations. (Doc. 1 ¶ 24).

4. The standalone programs TurboExcel creates consist of "Generated files" and "Runtime files". (Doc. 1 ¶ 33).

5. The Generated files contain the complicated mathematical calculations that were in the Microsoft Excel spreadsheets TurboExcel converted. (Doc. 1 ¶ 24).

6. The Runtime files are program files that, working with the Generated files, turn the calculations previously locked-up in Excel, into a running program on the user's computer. (Doc. 1 ¶ 33).

7. TurboExcel dramatically boosts productivity and efficiency saves thousands of man-hours of programming time and hundreds of thousands of dollars in programmer costs. (Doc. 1 ¶ 18).

8. SavvySoft's intellectual property in TurboExcel is protected in three ways: by Copyright, by License Agreement (Contract), and by Trade Secret.

9. **Copyright**: SavvySoft registered a copyright in the TurboExcel C++ computer code with the U.S. Register of Copyrights on March 8, 2021 and assigned registration number TX 8-941-523. (Doc. 1 ¶ 11 and Ex. 1).

10. **Contract**: SavvySoft only distributes TurboExcel pursuant to a license agreement that reserves all ownership rights in the program to SavvySoft, restricts copying to backup purposes only, prohibits distribution or transfer of the software to others, prohibits bypassing the software's copy protection, prohibits reverse engineering, disassembly or decompiling of the software, and imposes other restrictions on use of the software on the licensee and users. (Doc. 1 ¶¶ 16,17 and Ex. 2).

11. **Trade Secret**: SavvySoft consistently protected the software and its source code by requiring the use of license agreements that restricted its use and distribution, compiling the software code into executable files for distribution that obscured and protected the TurboExcel source code from disclosure, and limited access to the code to licensed users. (Doc. 1 ¶¶ 13-15 ).

### B. Western & Southern

12. Defendant Western & Southern Financial Group, Inc. is an Ohio based life insurance company. (Doc. 1 ¶ 22).

13.     Like most insurance companies, W&S is heavily dependent on Microsoft Excel to make underwriting decisions, often based on actuarial information, and it maintains sensitive and confidential algorithms in its spreadsheets that it uses to make decisions on insurance policy premium pricing. (Doc. 1 ¶ 23 ).

14.      TurboExcel has been extremely popular with insurance companies like W&S because insurance companies rely heavily on customized Excel spreadsheets to make underwriting decisions. These Excel spreadsheets contain sensitive and confidential algorithms. In order to give salespeople access to accurate insurance premium quotations, insurance companies like W&S needed a way to give their insurance agents an easy to use and portable version of those sensitive algorithms that agents could take with them on their laptops when making sales calls. (Doc. 1 ¶ 19 ).

### C.     W&S Licenses SavvySoft

15.     In 2005, Tom Sheehan of W&S requested prices for a single user professional license of TurboExcel. Mr. Tannenbaum sent a license agreement to W&S and W&S thereafter purchased one (1) single user professional license of TurboExcel, and agreed to the license agreement for TurboExcel. (Doc. 1 ¶ 25, Ex. 2).

16.     Right before buying a license, Mr. Tannenbaum explained to Mr. Sheehan that a single user Professional license only covered a single spreadsheet developer on a single computer, and that each additional spreadsheet developer whose spreadsheets would be converted required an additional license. Mr. Tannenbaum explained that a single user Professional license of TurboExcel was limited to use by one spreadsheet developer on the same computer used to create that spreadsheet. (Doc. 1 ¶ 26).

17.     Despite the limitations of the single user Professional license, W&S bought just the one single user Professional license covering just one spreadsheet creator using one computer for $3,000.  (Doc. 1 ¶ 28).

18.     W&S implemented TurboExcel and immediately found the product provided them with tremendous advantages such as improvement in speed which is key in their business processes. (Doc. 1 ¶ 29).

19.     W&S recommended TurboExcel to other companies. (Doc. 1 ¶ 29).

**D.     SavvySoft Discovers W&S Violated the License Agreement**

20.     In order to continue to use TurboExcel, W&S was required to annually update its license key. Every year, someone from W&S (typically Mr. Sheehan) contacted Mr. Tannenbaum of SavvySoft and obtained a new license key. This continued each and every year from 2006 through 2018. (Doc. 1 ¶ 30).

21.     In early 2018, a new IT department employee of W&S, not Mr. Sheehan, contacted Mr. Tannenbaum. Mr. Tannenbaum questioned the employee about W&S's use of TurboExcel. Mr. Tannenbaum was told that W&S set up TurboExcel on a single central computer in the IT department to convert spreadsheets into Generated files and create Runtime files for use throughout the entire company. (Doc. 1 ¶31 ).

22.     Mr. Tannenbaum advised W&S that its use of Savvysoft's TurboExcel product violated the terms of the TurboExcel license agreement, infringed upon Savvysoft's copyright in TurboExcel, and exceeded the limited use of Savvysoft's trade secrets permitted under the circumstances. (Doc. 1 ¶ 35).

23.     W&S refused to pay SavvySoft for its past unlicensed use of TurboExcel. (Doc. 1 ¶ 36).

### III.     ARGUMENT

### A.     Legal Standard

A motion under Rule 12(b)(6) is directed solely to the complaint itself. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). Consequently, the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).

A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe

the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See *Scheuer*, 416 U.S. at 236; *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). The court will indulge all reasonable inferences that might be drawn from the pleading. See *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).

**B.    The New York Statute of Limitations Applicable to W&S's Breach of the TurboExcel License Agreement was Tolled Based on the Continuing Wrong Doctrine**

Normally the six-year New York statute of limitations for breach of contract accrues when the contract is first breached. *T & N PLC v. Fred S. James & Co. of New York*, 29 F.3d 57, 59 (2d Cir. 1994). However, "'[o]ne exception to this rule is made for claims premised on a 'continuing wrong,' in which case 'each successive breach may begin the statute of limitations running anew.'" *Maloul v. New Colombia Res., Inc.,* No. 15 CIV 8710 (KPF), 2017 WL 2992202, at *5 (S.D.N.Y. July 13, 2017) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007). New York courts sometimes refer to the doctrine as the continuing-wrong doctrine. See, e.g., *Carey v. Trs. of Columbia Univ. in City of N.Y.*, 177 A.D.3d 452, 113 N.Y.S.3d 32, 33 (1st Dep't 2019); *Garron v. Bristol House, Inc.*, 162 A.D.3d 857, 79 N.Y.S.3d 265, 267 (2d Dep't 2018); *Affordable Hous. Assocs., Inc. v. Town of Brookhaven*, 150 A.D.3d 800, 54 N.Y.S.3d 122, 126 (2d Dep't 2017).

Under the continuing violation doctrine, "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously." *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 744 N.Y.S.2d 586, 587 (4th Dep't 2002) (quotation marks omitted). "New York courts have explained that tolling based on the doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct[.]'" *Salomon v. Town of Wallkill*,

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

174 A.D.3d 720, 107 N.Y.S.3d 420, 422 (2d Dep't 2019) (quotation marks omitted). The

continuing-wrong doctrine tolls running of the statute of limitations to the date of the

commission of the last wrongful act when there is a series of continuing wrongs. See e.g *Shelton*

*v. Elite Model Mgt., Inc.,* 11 Misc. 3d 345, 360–361, 812 N.Y.S.2d 745, abrogated on other

grounds 84 A.D.3d 1, 920 N.Y.S.2d 11).

      This case is one where the contract at issue provides for continuing performance over a

period of time and therefore the continuing wrong doctrine applies because the contract at issue

imposes a continuing duty that was repeatedly breached. See e.g *Greenfield v. Mold-Rite*

*Plastics, LLC,* 8:20-cv-00639-DNH-DJS, Doc. 22 at 13-14 (N.D.N.Y. Dec. 16, 2020) (included

in appendix to this memorandum)(where agreement's continuing duty of confidentiality applied

to defendant, continuing wrong doctrine applied to toll the New York breach of contract statute

of limitations).

      The license agreement for TurboExcel imposed on W&S the continuing duty to only use

TurboExcel on the one single computer licensed and to limit TurboExcel's use to processing of

only files created on that same computer:

> You may not use the Software to engage in a service bureau business[1] or
> similar activities. Savvysoft and its suppliers retain all right, title and interest in
> and to the Software, and any rights not expressly granted to you herein are
> reserved by Savvysoft and its suppliers. You may not copy (except to
> download the Software and make a single back-up or archival copy), distribute,
> sell, rent, lease, loan, modify, create derivative works, adapt, translate,
> perform, display, sublicense, transfer or otherwise distribute the Software on a
> standalone basis or as part of a collection, or as part of any product or service
> for resale. ***You may not have multiple computers or terminals connected***
> ***(directly or indirectly) to the licensed computer in order to allow more than***
> ***one computer to run the Software. You may not operate the licensed***
> ***computer to cause the Software to process files received from other***

---

[1] A service bureau is a company that provides business services for a fee. The term has been extensively used to
describe technology-based services to financial services companies, particularly banks and insurance companies.
https://en.wikipedia.org/wiki/Service_bureau

> ***computers, and the licensed computer can only process files that were
> substantially created on the licensed computer.***

(Doc. 1, Ex. 2).

The license agreement for TurboExcel agreed to by W&S also restricted W&S from

distributing the Generated files and Runtime files on an ongoing basis:

> The Software generates files based on the licensed user's spreadsheets
> ("Generated files"). The Software also contains run-time files ("Runtime
> Files") which are used in conjunction with Generated Files created by the
> Software. These Runtime Files consist of, among other things, routines for
> emulating the functions contained within Microsoft Excel. Other than for use
> with the Software, and use with the Generated Files, you may not use the
> Runtime Files with any other software application nor use the Runtime Files as
> part of any process or system that is used to automatically deliver, share, or
> distribute files or other work created using the Runtime files. You may not use
> the Runtime Files to distribute, sell, rent, lease, loan, modify, create derivative
> works, adapt, translate, perform, display, sublicense, transfer or otherwise
> distribute files on a standalone basis or as part of a collection, or as part of any
> product or service for resale, except as the Runtime Files are used directly by
> the Generated Files (however, the distributed Generated Files may not simply
> perform computations which are substantially identical to one or more of the
> functions in the Runtime Files). ***In no event may the Runtime Files be
> distributed without a valid copy of the Generated Files.*** The Generated Files
> may only be validly distributed with a valid license for distribution, which
> license is only granted to licensees of the Enterprise Edition of the Software
> and the Server Edition of the Software.

(Doc. 1, Ex. 2). Other continuing duties are found in the agreement in the sections on Copies[2],

Transfers[3], and Termination[4].

---

[2] "**Copies**. You may make one (1) copy of the Software solely for backup purposes. You must reproduce and include the copyright notice on the backup copy. No other copying is permitted. You may not distribute copies of the Software or accompanying written materials to others." (Doc. 1, Ex. 2).

[3] "**Transfers**. You may not transfer the Software to another person. You may transfer the Software from one of your computers to another one of your computers. Upon a transfer, you must remove all copies of the Software from the computer from which it was transferred. In no event may you transfer, assign, rent, lease, sell or otherwise dispose of the Software on a temporary basis." (Doc. 1, Ex. 2).

[4] "**Termination**. This Agreement is effective until terminated. This Agreement will terminate automatically without notice from Savvysoft if you fail to comply with any provision of this Agreement. Upon termination you shall destroy the written materials and all copies of the Software, including modified copies, if any." (Doc. 1, Ex. 2).

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

The Professional license agreement for TurboExcel is precisely the type of agreement to which the continuing wrong doctrine is intended to apply since the failure to apply the doctrine would result in "a perverse outcome [that] is not the object of statutes of limitations for breach of contract." *BJB Ltd. v. iStar Jewelry LLC*, No. 119CV3748ENVRER, 2021 WL 1431345, at *4 (E.D.N.Y. Apr. 9, 2021)(Holding that an exclusive dealership agreement (EDA) was an agreement of "precisely the kind that are meant to qualify under the continuing violation exception… an entirely open-ended contract that supplies only a framework for the parties to transact with one another over the course of their business relationship… and consistent with its open-ended and continuous nature, the agreement has no termination date.")

> By purportedly failing to live up to its obligations to make annual purchases and protect BJB's intellectual property, SC engaged in a pattern of conduct that constituted a continuing violation of the terms of the contract. To hold otherwise would allow an unnoticed breach at the outset of a long-term contract to insulate that party from liability for all breaches thereafter, once six years had elapsed.

*Id*., citing *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *125 (S.D.N.Y. Aug. 4, 2015) ("A defendant that manipulated LIBOR in 2008 is not immune simply because it also manipulated LIBOR in 2007 or 2006.").

The complaint alleges that W&S's

> continued use of its single TurboExcel license to generate the files for its Quote System on a single machine using spreadsheet files created by a single user required no further payments to Savvysoft, as the license was perpetual, but it did require an annual update to the software's license key to continue to be able to convert new or updated spreadsheets to object code. So once per year, Savvysoft sent Western & Southern a new license key to allow new or updated spreadsheets that their single user created on his or her single computer to be converted using TurboExcel. This continued each and every year from 2006 through 2018.

(Doc. 1 ¶ 30). The complaint goes on to allege that W&S's use during the period from 2006 through 2018 was in violation of the license agreement because "the computer licensed to

operate TurboExcel was processing and converting files received from other computers, and those files processed and converted were substantially created by other users on other computers in violation of the license agreement." (Doc. 1 ¶ 31 ). Each time W&S operated TurboExcel in excess of the single license granted to it, it used TurboExcel in violation of the license and W&S's duties thereunder and each use constituted a continuing wrong. See e.g. *Affordable Hous. Assocs., Inc. v. Town of Brookhaven*, 49 Misc. 3d 570, 573, 13 N.Y.S.3d 876, 879 (N.Y. Sup. 2015), aff'd, 150 A.D.3d 800, 54 N.Y.S.3d 122 (2017)("…plaintiff alleges that, beginning in 2008, the Town engaged in a series of wrongful acts that culminated with the Town executing contracts with the Mooney defendants on July 28, 2009, for the two sites in question…. Applying the continuing-wrong doctrine, the court finds that the plaintiff's breach-of-contract claim against the Town accrued on July 28, 2009, the date of the last alleged wrongful act.")

W&S argues that its "alleged breach of the SLA occurred in 2005" and therefore SavvySoft's claim for breach of contract "is now out of time by ten years." (Doc. 13 at 9). W&S is wrong. As the complaint makes clear, W&S's breach occurred each and every time it exceeded the limitations of the TurboExcel Professional license, and that occurred as recently as 2018 and perhaps even thereafter if discovery shows that W&S continued using TurboExcel after it admitted to SavvySoft in 2018 that W&S violated its duties under the license agreement starting in 2005 and continuing through 2018 when it set up TurboExcel on a single central computer in the IT department to convert spreadsheets into Generated files and create Runtime files for use throughout the entire company. (Doc. 1 ¶ 37).

Those are the violations alleged. If W&S's violations, which occurred as recently as 2018 and therefore are clearly within the New York six-year statute of limitations for breach of contract, are not as clearly alleged as this Court requires, leave to amend should be granted.

Furthermore, if W&S's violations, which occurred throughout the period from 2005 to 2018, and which violated W&S's continuing duties not to exceed the limited scope of the Professional license, are not as clearly alleged as this Court requires, leave to amend should be granted.

### C.    SavvySoft Filed this Copyright Infringement Case within Three Years of Discovery of the Infringement Making it Timely

The elements of copyright infringement are (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). Liability for copyright infringement occurs when a defendant violates a right that belongs exclusively to the copyright owner. 17 U.S.C. § 501(a).

A civil lawsuit for copyright infringement must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright infringement claim accrues "when a plaintiff knows of the infringement or is chargeable with such knowledge." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 390 (6th Cir. 2007). Furthermore, each new infringing act "causes a new three-year statutory period to begin', as 'each infringement is a distinct harm.'" *Mitchell v. Capitol Records, LLC*, 287 F.Supp.3d 673, 676, 2017 WL 6459808, *2 (W.D. Ky. 2017) quoting *Roger Miller Music, Inc.,* 477 F.3d at 390.

Relying upon a declaration of counsel attaching counsel's letter making claims outside the pleadings, W&S seeks dismissal based on the three-year statute of limitations for copyright infringement. Obviously, W&S cannot seek dismissal based on an extraneous letter attached to the complaint that is not made a part thereof. "Matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

The only exception to the rule that matters outside the pleadings are not considered on a

12(b)(6) motion relates to written instruments referred to by the plaintiff in the complaint but not attached as exhibits by the plaintiff. Under those circumstances, a defendant can attach a dispositive document to its motion and the court can consider it in order to avoid a plaintiff with a legally deficient claim surviving a motion to dismiss. *Id.*, 108 F.3d at 89.

That is not the case here. W&S's contentions in its unsworn letter attachments submitted in opposition to the motion to dismiss are *inconsistent* with the complaint and *contradict* its allegations.[5] The unsworn attachments to W&S's motion claim W&S stopped using TurboExcel in early 2018. The complaint alleges the opposite, namely continued use of Savvysoft's copyrighted software after W&S was advised it was in violation of the license agreement.

The complaint alleges that after SavvySoft advised W&S "that its use of Savvysoft's TurboExcel product violated the terms of the TurboExcel license agreement, infringed upon Savvysoft's copyright in TurboExcel, and exceeded the limited use of Savvysoft's trade secrets permitted under the circumstances" (Doc. 1 ¶ 35), W&S refused to pay Savvysoft and "continued to use and distribute the Runtime Files generated by TurboExcel without a valid copy of the Generated Files as part of the Western & Southern Quote System." (Doc. 1 ¶ 36).

> 37. Western & Southern's continued use and distribution of the Runtime Files generated by TurboExcel without a valid copy of the Generated Files as part of the Western & Southern Quote System constituted a further violation of the terms of the TurboExcel license that Defendants argue that Plaintiff's copyright infringement and conversion claims are barred by the statute of limitations.

(Doc. 1 ¶ 37).

An infringement claim accrues when an infringing act occurs. The complaint alleges

---

[5] A court evaluating a motion to dismiss is free to consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016). None of the exhibits attached to the defendant's motion here are referred to in the complaint. Furthermore, none of the exhibits attached to the defendant's motion are central to plaintiff's claims. They are nothing but argument by defendant.

infringing acts occurred into 2018 after W&S was notified. This action was filed on March 22, 2021. Assuming the truth of the well-pled and plausible allegations in the complaint, as this court must on a Rule 12(b)(6) motion, the complaint alleges infringement by W&S within the three-year statute of limitations for copyright infringement.

**D.     The Complaint Adequately Alleges All the Elements of Copyright Infringement**

W&S argues that the complaint is deficient because it "does not allege that W&S ever copied the constituent elements of the TurboExcel program." (Doc. 13 at 9). W&S misunderstands the complaint. The complaint does allege that W&S exceeded the rights it had been granted and violated the rights of Savvysoft. Savvysoft does not need to prove its claims, only plausibly allege a short and plain statement giving W&S notice of its claims. The complaint sufficiently states copyright infringement by W&S to withstand a motion to dismiss. See *Ford Motor Co. v. Autel US Inc.,* No. 14-13760, 2016 WL 3569541, at *3 (E.D. Mich. July 1, 2016) ("Ford need not prove its copyright infringement claims in its complaint. Ford has alleged facts in the Second Amended Complaint that sufficiently plead copyright infringement…")

**1.     The Complaint Adequately Alleges Copying of TurboExcel**

The complaint alleges that W&S used the TurboExcel program as if W&S was a "service bureau" by installing the program on a central computer and using it to process and convert files from numerous spreadsheet users and creators at W&S.

> 31. In early 2018, Savvysoft's Mr. Tannenbaum was contacted by a new employee from the Western & Southern IT department inquiring about TurboExcel. This was unusual because Mr. Tannenbaum's previous interactions with Western & Southern were with someone he believed to be an actuary requesting help in modifying the spreadsheets. Mr. Tannenbaum asked about Western & Southern's current use of the TurboExcel product, and was told that **the Turbo Excel product was set up on a central computer that was being used by a member of the IT department to convert spreadsheets created by numerous different actuaries and underwriters at Western & Southern. In other words, the computer licensed to operate TurboExcel was processing and converting files received from other computers, and**

**SRIPLAW**
Cᴀʟɪꜰᴏʀɴɪᴀ ◆ Gᴇᴏʀɢɪᴀ ◆ Fʟᴏʀɪᴅᴀ ◆ Tᴇɴɴᴇssᴇᴇ ◆ Nᴇᴡ Yᴏʀᴋ

**those files processed and converted were substantially created by other users on other computers in violation of the license agreement.**

(Doc. 1 at ¶ 31)(emphasis added).

The complaint in this case, and the license attached as Exhibit 1, makes clear that the use of TurboExcel to operate a "service bureau" was prohibited by the license agreement and the scope of the permitted use W&S was granted. (Doc. 1 ¶32 "You may not use the Software to engage in a service bureau business or similar activities.").

Under the Copyright Act, "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright." 17 U.S.C. § 501(a). "A licensee infringes the owner's copyright if its use exceeds the scope of its license." *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940 (7th Cir. 2003) (internal quotation marks omitted). Thus, "[o]ne who obtains permission to use a copyrighted" work "may not exceed the specific purpose for which permission was granted," *Gilliam v. Am. Broad. Cos.*, 538 F.2d 14, 20 (2d Cir. 1976), and "unauthorized editing of the underlying work ... constitute[s] an infringement of the copyright in that work similar to any other use of a work that exceeded the license granted by the proprietor of the copyright," *id*. at 21. If a licensee acts outside the scope of the license, the licensor may sue for copyright infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).

Here the complaint alleges that W&S exceeded the scope of the license agreement by setting up the TurboExcel product "on a central computer that was being used by a member of the IT department to convert spreadsheets created by numerous different actuaries and underwriters at Western & Southern." (Doc. 1 ¶ 31). This use violated the provisions in the license agreement that prohibited the use of TurboExcel to operate a "service bureau business or similar activities." (Doc. 1 Ex. 1). This use violated the provisions of the license agreement that

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

prohibited the use of "multiple computers or terminals connected (directly or indirectly) to the licensed computer in order to allow more than one computer to run" TurboExcel. (Doc. 1 Ex. 1). This use violated the provisions of the license agreement that prohibited W&S from causing "the Software to process files received from other computers," because the license agreement limited the "licensed computer" to processing "files that were substantially created on the licensed computer," but W&S permitted TurboExcel to process files from multiple computers. (Doc. 1 Ex. 1). Because the use exceeded the scope of the license agreement, and thereby violated the exclusive rights of Savvysoft as the copyright owner, the use was infringing.

W&S argues "TurboExcel was never copied." (Doc. 13 at 9). W&S is wrong. W&S did copy. "Copying" for purposes of copyright law occurs when a computer program is transferred from a permanent storage device to a computer's RAM, and the "loading of copyrighted software into RAM creates a 'copy' of that software in violation of the Copyright Act." *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 518 (9th Cir. 1993). Therefore, every time W&S loaded Savvysoft's TurboExcel software into RAM in order to run the software and engage in a use beyond the scope of the license agreement, W&S made an unauthorized copy and violated Savvysoft's copyright. Contrary to W&S's arguments, the use by W&S was copying.[6]

2. **The Complaint Adequately Alleges W&S's Liability for Indirect Copyright Infringement**

"One infringes … vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted). "Liability for vicarious copyright infringement arises

---

[6] W&S wastes pages arguing that Savvysoft is claiming infringement of the Generated files containing W&S's Excel calculations. (Doc. 13 at 11-12) Savvysoft is not claiming ownership of copyright in the Generated files. Savvysoft does have a copyrightable interest in, and is claiming infringement in, the TurboExcel Runtime files, which are part of the Savvysoft TurboExcel program protected by copyright.

'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (quoting *Grokster*, 545 U.S. at 931 n.9).

The complaint alleges the following concerning W&S's vicarious liability:

52. Western & Southern employees copied, used, made available, distributed and made derivative works of the Work without Savvysoft's authorization in violation of 17 U.S.C. § 501.

53. Western & Southern knew or should have known about the infringement by its employees, was entitled to control or regulate that infringement, and profited from it.

(Doc. 1 ¶¶ 52, 53). These allegations state a claim for vicarious infringement to the letter. W&S's employees are directly liable for infringement, and when they operated the TurboExcel software in violation of the license agreement and W&S did nothing to stop it and profited from it indirect infringement arose. The complaint states this claim sufficiently.

W&S argues that it did not induce third-parties to infringe. (Doc. 13 at 14). W&S misunderstands Savvysoft's claim which is vicarious infringement that does not involve inducement of third-parties. Vicarious infringement arises because W&S knowingly permitted its employees to infringe and profited from the infringement while not stopping it.

**E.     The Complaint Pleads Trade Secrets Claims Sufficiently to Withstand a Motion to Dismiss**

To state a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), a plaintiff must allege facts establishing an unconsented disclosure or use of a trade secret by one who used improper means to acquire the secret; or, at the time of the disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret. See 18 U.S.C. §

1839(5); *Ford Motor Co. v. Launch Tech Co.*, No. 17-12906, 2018 WL 1089276, at *16 (E.D. Mich. Feb. 26, 2018).

The Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, et seq., creates a federal cause of action that largely mirrors the uniform trade secrets act.[7] See *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311, fn. 13 (11th Cir. 2020). To plead a claim for trade secrets misappropriation under the Ohio Uniform Trade Secrets Act ("OUTSA"), a plaintiff must allege (1) The existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *Thermodyn Corp v. 3M Co.,* 593 F. Supp. 2d 972, 985 (N.D. Ohio 2008).

W&S argues that the complaint insufficiently alleges the existence of a trade secret, and in fact cannot be considered a trade secret at all. (Doc. 13 at 15-19). Again, W&S misunderstands the complaint. But, regardless of whether W&S understands what Savvysoft's trade secret it, the complaint sufficiently alleges the existence of a trade secret, and "whether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side.'" *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1298-99 (11th Cir. 2018) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978)). In other words, whether Savvysoft's TurboExcel program is a trade secret or

---

[7] A trade secret is defined as

information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code Ann. § 1333.61 (2021). The definition of a trade secret under the Defend Trade Secrets Act is substantially the same as in OUTSA. *Heartland Home Finance, Inc. v. Allied Home Mortg. Capital Corp.,* 258 Fed. Appx. 860, 2008 WL 77785.

not is an issue of fact for determination after discovery, not a basis for dismissal.

W&S acknowledges that Savvysoft "identifies TurboExcel, Plaintiff's commercial software product, as the trade secret upon which its DTSA and OUTSA claims (Counts III and IV) are based." (Doc. 13 at 16). W&S also acknowledges that Savvysoft alleged "that 'TurboExcel is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, including the use of licensing agreements and the distribution of compiled code only.'" (Doc. 13 at 16). The license agreement for TurboExcel specifically states that the program is a trade secret of Savvysoft:

> **Ownership Of Software.** Savvysoft and its suppliers retain the copyright, title and ownership of the Software and all related written materials. You acknowledge that this software and documentation, the object code for this software, the visual expressions, screen formats, report formats and other design features of this software, all ideas, methods, algorithms, formulae and concepts used in developing and/or incorporated into this software or documentation, all derivative works based upon any of the foregoing, and all copies of the forgoing are **trade secrets and proprietary property of Savvysoft**, having great commercial value to Savvysoft. You acknowledge that the restrictions in this Agreement are reasonable and necessary to protect Savvysoft's legitimate business interests.

(Dkt. 1 Ex. 2)(emphasis added). But nonetheless, W&S claims these allegations are conclusory and insufficient.[8]

W&S is incorrect. The complaint contains more than conclusory allegations concerning Savvysoft's trade secret in its TurboExcel software. W&S apparently seeks evidence of the trade secrets within the TurboExcel program to be set forth in the complaint. This is improper. Savvysoft's trade secret claims are adequately pled to withstand a motion to dismiss. See *Launch Tech Co.*, 2018 WL 1089276, at *17 ("Construing the First Amended Complaint in the light

---

[8] W&S claims the complaint fails to allege "required measures aimed at keeping the software confidential, such as limiting who within the W&S enterprise could use the copy of the software, ensuing it was password-protected, or providing any other restrictions on access." (Doc. 13 at 16). W&S forgets the allegations regarding the need for an annual renewal of a license key by W&S in order to continue using TurboExcel. (Doc. 1 ¶ 30). This is an odd omission by W&S since it was this annual renewal that occasioned Savvysoft's discovery of W&S's infringement in 2018.

most favorable to Ford, the Court finds that Ford has sufficiently alleged that the information at issue consists of trade secrets, and that Ford took reasonable efforts to maintain their secrecy."); *Compuware Corp. v. Int'l Bus. Machines*, 259 F. Supp. 2d 597, 605 (E.D. Mich. 2002) ("While Compuware has not identified the trade secrets "clearly, unambiguously, and with specificity," such is not necessary at the pleading stage. The court finds that Compuware's allegations give adequate notice of its cause of action to IBM. Any further specificity desired by IBM can be achieved through discovery.").

W&S argues that "Plaintiff alleges no misappropriation of TurboExcel's source code, and does not claim that W&S did anything but use the executable elements of the software." (Doc. 13 at 18). W&S is incorrect. The complaint alleges that W&S "used TurboExcel without the express or implied consent of Savvysoft under circumstances giving rise to a duty to limit the use of the trade secret." (Doc. 1 ¶¶ 58, 63). W&S used TurboExcel in excess of its licensed, permitted use of the software under the license agreement and its use "exceeded the limited use of Savvysoft's trade secrets permitted under the circumstances." (Doc. 1 ¶ 37). This use included the continued use and distribution of "the Runtime Files generated by TurboExcel without a valid copy of the Generated Files as part of the Western & Southern Quote System." (Doc. 1 ¶ 36). These allegations are more than sufficient to inform W&S of the allegations against it and satisfy the requirements of Rule 8. The motion to dismiss should be denied.

## IV. CONCLUSION

The motion to dismiss the complaint should be denied in its entirety. In the event that the Court determines that the complaint is insufficient in any respect, plaintiff respectfully requests leave to amend be granted.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

WHEREFORE, Plaintiff OPTIONS UNLIMITED RESEARCH CORP. DBA

SAVVYSOFT requests that W&S's Motion to Dismiss be denied, and the court grant such other

and further relief deemed equitable or necessary.

DATED: July 12, 2021                          Respectfully submitted,


*/s/  Joel B. Rothman*_____
JOEL B. ROTHMAN
*Pro hac vice*
joel.rothman@sriplaw.com

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

Mr. John D. Gugliotta
**Gugliotta & Gugliotta, LPA**
3020 West Market Street
Fairlawn, OH 44333
Tel: 888-298-8589
Fax: 330-253-6658
Email: johng@inventorshelp.com


*Counsel for Plaintiff Options Unlimited Research
Corp. Dba Savvysoft*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on July 12, 2021, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN

## SERVICE LIST

Mr. Eric W. Richardson
Mr. Brent D. Craft
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street
Suite 3500 - Great American Tower
Cincinnati, OH 45202
ewricharson@vorys.com
bdcraft@vorys.com
Attorneys for Western & Southern Financial
Group, Inc.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK